UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY C. MARTIN,<br><br>    Plaintiff,<br><br>        v.<br><br>WEXFORD HEALTH OF INDIANA,<br>et al.,<br><br>    Defendants. | CAUSE NO. 3:20-CV-119-JD-MGG |

OPINION AND ORDER

Anthony C. Martin, a prisoner without a lawyer, filed a complaint naming 14 defendants and making numerous allegations about his medical care and events which occurred at the Westville Correctional Facility from August 28, 2019, to January 4, 2020. (ECF 1.) He also filed a motion for a preliminary injunction. (ECF 3.) A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Martin, who is currently housed at the Westville Correctional Facility, alleges that, when he arrived at Westville, on August 28, 2019, he was suffering from a serious

medical condition stemming from an assault by prison staff at his prior facility that injured his shoulder and arm. (ECF 1 at 4.) Martin claims that a doctor at that facility prescribed a shoulder sling, a front handcuffing pass, physical therapy, and a mental health evaluation. (*Id.*) He also wrote an order for him to see an ophthalmologist. (*Id.*) He asserts, however, that when he arrived at Westville, Captain G. Lewis confiscated his shoulder sling and prescription eyeglasses. (*Id.*) Captain Lewis allegedly told him that a Westville doctor would evaluate his medical condition and decide what services he needed. (*Id.*)

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical need. *Id.* A medical need is "serious" if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted). Accepting Martin's allegations as true and giving him the benefit of the inferences to which he is entitled, as the court must at this stage of the proceedings, he has alleged facts from which it can be inferred that

Captain Lewis was deliberately indifferent to his serious medical needs when, on August 28, 2019, he intentionally took his shoulder sling and eyeglasses from him.

Next, Martin alleges that his constitutional rights were violated because he repeatedly attempted to file a grievance about Captain Lewis's actions but J. Harvill, the grievance specialist, refused to accept the grievance and process it. (ECF 1 at 4-5.) But, Martin has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure). Accordingly, Martin will not be permitted leave to proceed against Grievance Specialist J. Harvill (or any other defendant) based on allegations that the manner in which his grievances were handled violated his Due Process rights.

While Martin does not give a specific date, at some point, he saw Dr. Liawo and discussed the medical issues he was having since he arrived at Westville. (ECF 1 at 5.) Martin asserts that Dr. Liawo agreed to follow-up with his superior, Health Services Administrator D. Livers, and D.O.N. Reebeck, the director of nursing, about getting him a shoulder sling and front handcuffing pass because he had a shoulder and arm injury. (*Id*.) He states Dr. Liawo also ordered physical therapy sessions, referred him to an ophthalmologist, and placed him on the mental health schedule. (*Id*.) However, according to Martin, he never received any of these medical services.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

3

demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Even incompetence does not state a claim for deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett*, 658 F.3d at 752-53; *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Here, Martin has not stated a claim because he has not identified the individual who he believes was responsible for not following through on Dr. Liawo's ordered treatment. Instead, he simply lists Dr. Liawo, HSA D. Livers, and D.O.N. Reebeck without specifying which of these defendants is responsible for the alleged constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Therefore, he cannot proceed on this claim.

From August 28, 2019, through September 7, 2019, Martin alleges that he did not have his blood pressure and mental health medication because the medication had not been transferred from his prior facility. (ECF 1 at 5-6.) He states that he takes these medications on a daily basis and endured "serious consequences" by not having them. (*Id*. at 6.) With respect to these allegations, Martin has named Wexford as a defendant.

4

Wexford is the private company which provided medical care at the prison. Martin attempts to hold the company liable because it employs the medical staff. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). Because Martin's complaint against Wexford appears to be based only on Wexford's medical staff's failure to provide him with his medication, he has not stated a claim against Wexford.

Martin asserts that when he complained about not getting his medications Warden Gailpeau, Captain Lewis, and Harvill violated his constitutional rights because they allegedly told him to "quit crying about everything" and that he was an "inmate in prison." (ECF 1 at 6.) However, mere verbal harassment does not rise to the level of a constitutional violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (rude language or verbal harassment by prison staff "while unprofessional and deplorable does not violate the Constitution."). Therefore, his allegations do not state a claim and he may not proceed against these defendants.

On September 9, 2019, Martin asserts that his Eighth Amendment rights were violated when he did not receive mental health treatment for a panic attack. (ECF 1 at 6.) He alleges that Captain Lewis refused to provide him with treatment stating that "he [does not] mess with snitches or a rat." (*Id*.) Martin also told Nurse Josh Keuiper that he was having difficulty breathing, had a rapid heartbeat, and felt nauseous. (*Id*.) Martin claims that Nurse Keuiper informed him that he had orders not to take Martin out of his

5

cell and he was "just faking." (*Id*.) Accepting Martin's allegations as true and giving him the benefit of the inferences to which he is entitled at this stage of the proceeding, he has alleged facts which infer Captain Lewis and Nurse Keuiper were deliberately indifferent to his serious medical needs when they failed to provide him with medical care for his panic attack. Therefore, Martin will be permitted to proceed against these defendants.

The next day, on September 10, 2019, Martin claims that Nurse Keuiper gave him the wrong medication, which caused his face and tongue to swell up as well as excessive sweating. (ECF 1 at 7.) He states that HSA D. Livers and D.O.N. Reebeck told him that his symptoms were not life threatening and refused to provide him with treatment. (*Id*.) Martin asserts that he was not seen by medical staff until September 17, 2019, when he was once again denied services. (*Id*.) He states that HSA D. Livers and Nurse Keuiper told him they had spoken with a doctor who told them he had a "cosmetic issue" and "Wexford doesn't cover things like that." (*Id*.) He asserts that they told him to order a "coco butter stick or skin lotion" and they laughed about his indigent status. (*Id*.) Accepting Martin's allegations as true and giving him the benefit of the inferences to which he is entitled at this stage, he has stated an Eighth Amendment claim against HSA D. Livers and D.O.N. Reebeck for denying him medical care for his reaction to receiving the wrong medication.

On October 18, 2019, Martin asserts his hand was smashed in the food slot in his cell. (ECF 1 at 7.) He states that Nurse Purdue witnessed the event and knew he had sustained injuries as a result of the incident. (*Id*.) Martin states Warden Gailpeau and

6

Captain Lewis told Nurse Purdue that if Nurse Purdue could not examine his hand without uncuffing it then Nurse Purdue should not provide him with any medical treatment. (*Id*. at 7-8.) He asserts that Nurse Purdue failed to act even though Nurse Purdue knew he was bleeding, in pain, and unable to move his fingers. (*Id*. at 8.) Accepting Martin's allegations as true and giving him the benefit of the inferences to which he is entitled at this stage of the proceeding, he has stated an Eighth Amendment claim and may proceed against Warden Gailpeau, Captain Lewis, and Nurse Purdue for denying him medical care after his hand was smashed in his cell's food slot.

With respect to the October 18, 2019, incident, Martin also alleges that his First Amendment rights were violated when Warden Gailpeau and Captain Lewis retaliated against him for filing a grievance against them by placing him in a cell for more than 10 days with no clothes where freezing cold air blew on him and caused him serious injury. (ECF 1 at 8.) "To prevail on his First Amendment retaliation claim, [Martin] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here, Martin has plausibly alleged all three elements and will be granted leave to proceed against Warden Gailpeau and Captain Lewis.

On November 16, 2019, Martin asserts he finally received medical care when x-rays were taken of his hand. (ECF 1 at 8.) However, since his x-rays, he claims he has not received any medical treatment for his hand. (*Id*. at 9.) Because he has not had

7

follow-up treatment, he cannot move two of his fingers or rotate his hand. (*Id*.) His wrist and hand are also constantly numb and painful. (*Id*.) Martin claims he did not receive the follow-up treatment he needed because Nurse Keuiper falsified his records by putting "incorrect entries of dates and times of visits." (*Id*. at 10.) According to Martin, the falsification of his records resulted in him being treated differently than other inmates. It is unclear what Martin is alleging here, but to the extent he may be asserting an equal protection claim, a plaintiff "must demonstrate intentional or purposeful discrimination." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). Specifically, he must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Because Martin has not alleged facts showing Nurse Keuiper intentionally discriminated against him when he supposedly falsified his records, he may not proceed on this claim.[1]

In December 2019, Martin asserts he made four separate requests for mental health treatment because a family member passed away. (ECF 1 at 11.) However, he claims those requests were denied. (*Id*.) He states that Rick Usdoski, a mental health professional, told him there was nothing he could do because Wexford did not have enough staff, and he was not paid enough to deal with the inmates. (*Id*.) Martin states he felt depressed and contemplated suicide. (*Id*.) Accepting Martin's allegations as true

---

[1] Martin has also sued Nurse Davenport because she "put [him] in for urgent care several times," but her supervisor told her to ignore his requests. (ECF 1 at 9.) However, he has not explained how Nurse Davenport's conduct violates the constitution.

8

and giving him the benefit of the inferences to which he is entitled at this stage of the proceeding, he has stated a claim against MHP Usdoski for denying him mental health treatment in violation of the Eighth Amendment.

On December 19, 2019, Martin alleges that Captain Lewis used excessive force when he assaulted him, which resulted in injuries to his neck and throat. (ECF 1 at 11, 17.) The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quotation marks and citation omitted). Martin's conclusory allegations fail to state a claim for excessive force because he has not provided the court with any details regarding Captain Lewis's assault on him. Therefore, he may not proceed on this claim.

Martin alleges that, after being assaulted, he requested medical care, but none was provided. (ECF 1 at 11.) He claims that Nurse Ronda told him that she did not believe an inmate's account of an assault over those of a staff member. (*Id*.) Martin asserts that Nurse Ronda stated: "I thought you black guys w[ere] suppose to be gangster or hard core" and she did not "think a little physical interaction or attitude adjustment would kill [him]." (*Id*.) Martin states that Nurse Ronda walked away laughing and refusing to give him medical treatment. (*Id*.) Accepting Martin's

9

allegations as true and giving him the benefit of the inferences to which he is entitled at this stage of the proceeding, he has stated a claim against Nurse Ronda for denying him medical treatment after the December 19, 2019, assault.

From December 23, 2019, through January 4, 2020, Martin asserts he continued to be denied mental health services. (ECF 1 at 11.) He claims that Mental Health Professional Monica Walla told him that Wexford was understaffed, and he would be better off trying to help himself rather than relying on the mental health care providers at the facility. (*Id*.) He asked MHP Walla about changing his medication because he was having suicidal thoughts and claims she told him to "pray" and if there really was a "God" that he would let him live until the next time she had availability to see him. (*Id*. at 12.) He asked her if she was "serious" and she stated "come on Mr. Martin you think they really give a f*** about you. If you don't like the system than file a lawsuit." (*Id*.) She then laughed and said "Oops, I'm sorry, [y]ou already did that and you see how that turned out now didn't you." (*Id*.) Given Martin's allegations and the inferences to which he is entitled at this juncture, he has stated a claim against MHP Walla for denying him mental health services in violation of the Eighth Amendment.

Furthermore, when Martin filed his complaint, he had not yet received a shoulder sling, a front handcuffing pass, physical therapy sessions, or an appointment with an ophthalmologist that Dr. Liawo ordered several months earlier. (ECF 1 at 13.) He was not receiving mental health services despite Dr. Liawo's order and he still did not have the eyeglasses he had when he arrived at Westville on August 28, 2019. He had not received treatment for injuries sustained when his hand was smashed on

10

October 18, 2019, or for injuries to his neck and throat sustained on December 19, 2019. Martin also alleges that he needs treatment for serious migraines headaches but that he has not been seen by a medical provider for this condition because there is a waiting list. Warden Gailpeau of the Westville Correctional Facility has both the authority and the responsibility to ensure that Martin receives constitutionally adequate medical treatment for his shoulder, eye, hand, neck, and throat injuries as well as his migraine headaches and mental healthcare needs. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, in addition to the claims enumerated above, Martin will be granted leave to proceed against Warden Gailpeau in his official capacity for injunctive relief to receive constitutionally adequate medical care for his shoulder, eye, hand, neck, and throat injuries as well as his migraine headaches and mental healthcare needs. Martin has also filed a request for preliminary and permanent injunctive relief. (ECF 3.) However, the court will defer ruling on Martin's request for a preliminary injunction until Warden Gailpeau has filed a declaration in response to this request and Martin has had an opportunity to reply.

Additionally, Martin has sued Commissioner R. Carter, but he never mentions him in the body of his complaint. Therefore, he cannot proceed on a claim against Commissioner R. Carter.

As a final matter, to the extent Martin appears to be asserting additional federal claims as well as a laundry list of state law claims, those claims are neither developed nor specific enough for the court to address these claims. (ECF 1 at 16-18.) In asserting these conclusory claims, he simply lists various defendants' names with multiple legal

11

theories after them. (*Id*.) In other words, he has failed to sufficiently articulate the bases for these claims. Therefore, Martin may not proceed on any of these alleged legal theories.

For these reasons, the court:

(1) GRANTS Anthony C. Martin leave to proceed against Captain G. Lewis in his individual capacity for compensatory and punitive damages for intentionally taking his prescribed shoulder sling and eyeglasses from him on August 28, 2019, in violation of the Eighth Amendment;

(2) GRANTS Anthony C. Martin leave to proceed against Captain G. Lewis and Nurse Josh Keuiper in their individual capacities for compensatory and punitive damages for denying him mental health treatment for a panic attack on September 9, 2019, in violation of the Eighth Amendment;

(3) GRANTS Anthony C. Martin leave to proceed against HSA D. Livers and D.O.N. Reebeck in their individual capacities for compensatory and punitive damages for denying him medical care for his reaction to receiving the wrong medication on September 10, 2019, in violation of the Eighth Amendment;

(4) GRANTS Anthony C. Martin leave to proceed against Warden Gailpeau, Captain G. Lewis and Nurse Purdue in their individual capacities for compensatory and punitive damages for denying him medical care after his hand was smashed in his cell's food slot on October 18, 2019, in violation of the Eighth Amendment;

(5) GRANTS Anthony C. Martin leave to proceed against Warden Gailpeau and Captain G. Lewis in their individual capacities for compensatory and punitive damages

for retaliating against him, after he filed a grievance, by placing him in a cell for more than 10 days with no clothes where freezing cold air blew on him causing him serious injury on October 18, 2019, in violation of the First Amendment;

(6) GRANTS Anthony C. Martin leave to proceed against MHP Rick Usdoski in his individual capacity for compensatory and punitive damages for denying him mental health treatment in December 2019, in violation of the Eighth Amendment;

(7) GRANTS Anthony C. Martin leave to proceed against Nurse Ronda in her individual capacity for compensatory and punitive damages for denying him medical treatment after the December 19, 2019, assault, in violation of the Eighth Amendment;

(8) GRANTS Anthony C. Martin leave to proceed against MHP Monica Walla in her individual capacity for compensatory and punitive damages for denying him mental health services from December 23, 2019, through January 4, 2020, in violation of the Eighth Amendment;

(9) GRANTS Anthony C. Martin leave to proceed against Warden Gailpeau at the Westville Correctional Facility in his official capacity for injunctive relief to provide him with constitutionally adequate medical care for his shoulder, eye, hand, neck, and throat injuries as well as his migraine headaches and mental healthcare needs, as required by the Eighth Amendment;

(10) DISMISSES all other claims;

(11) DISMISSES Wexford Health of Indiana, Dr. Liawo, Nurse Davenport, Commissioner R. Carter, and J. Harvill;

(12) DIRECTS the clerk to request Waiver of Service from Warden Gailpeau at the Westville Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 1) and motion for preliminary injunction (ECF 3), pursuant to 28 U.S.C. § 1915(d);

(13) DIRECTS the clerk to fax or email a copy of the same documents to Warden Gailpeau at the Westville Correctional Facility;

(14) DIRECTS the United States Marshals Service to serve process pursuant to 28 U.S.C. § 1915(d) on Warden Gailpeau at the Westville Correctional Facility by **March 18, 2020**, if an entry of appearance has not been entered by **March 11, 2020**;

(15) ORDERS Warden Gailpeau at the Westville Correctional Facility to file and serve a response to the motion for preliminary injunction as soon as possible but no later than **March 24, 2020,** with supporting medical documentation and declarations from other staff, as necessary, explaining how Anthony C. Martin is receiving constitutionally adequate medical care for his shoulder, eye, hand, neck, and throat injuries as well as his migraine headaches and mental healthcare needs, as required by the Eighth Amendment;

(16) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Captain G. Lewis at the Indiana Department of Correction with a copy of this order, and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(17) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Nurse Josh Keuiper, HSA D. Livers,

D.O.N. Reebeck, Nurse Purdue, MHP Rick Usdoski, Nurse Ronda, and MHP Monica Walla at Wexford Health of Indiana with a copy of this order, and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(18) ORDERS the Indiana Department of Correction and Wexford Health of Indiana to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if it has such information; and

(19) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Captain G. Lewis, Nurse Josh Keuiper, HSA D. Livers, D.O.N. Reebeck, Warden Gailpeau, Nurse Purdue, MHP Rick Usdoski, Nurse Ronda, and MHP Monica Walla respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 5, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT